# EXHIBIT 4

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| IN THE ARBITRATION BETWEEN | § | |
| | § | |
| LODA OKLA, LLC and VICTORIA TIME | § | |
| CORP., | § | |
| | § | |
| Claimants, | § | Case No. 71 20 1300 0374 |
| | § | (Elizabeth Kidd, Case Manager) |
| and | § | |
| | § | |
| AMERICAN NATURAL RESOURCES, LLC, | § | |
| MICKEY JOE OVERALL, and GINETTE LEE | § | |
| OVERALL, | § | |
| | § | |
| Respondents. | § | |

## AWARD

We, THE UNDERSIGNED PANEL, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated June 16, 2011, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby AWARD as follows:

1. Introduction

1.1     Final hearing was held beginning at 9:00 a.m. June 2, 2014 at the Oklahoma City University School of Law in Oklahoma City, Oklahoma before Arbitrators Estes, Arnot and Waldo (hereinafter "Panel").

1.2     The arbitration proceeded under the authority of the clause found in the Joint Participation Agreement (Claimants' Exhibit No. 1) which provides as follows in paragraph 12:

> "Notwithstanding anything otherwise provided herein or in the JOA, the Parties agree that all disputes arising under this Agreement (or the JOA) shall be resolved by arbitration in Oklahoma City, Oklahoma, pursuant to the commercial arbitration rules of the American Arbitration Association ("AAA")."

1.3     This Award applies the substantive laws of the State of Oklahoma pursuant to the same paragraph which provides ". . . all the terms and provisions hereto shall be governed, construed and enforced according to the laws of the State of Oklahoma."

1.4     Claimants were represented by David M. Bates of Gardere Wynne Sewell LLP and Dean Luthey of Gable Gotwals.

1.5     Claimant representatives present were Paolo Rubino and Antonio D'Addario, counsel for Claimants.

1.6     Respondents were represented by Richard L. Rose and Richard J. Gore of Mahaffey & Gore PC, Bradley K. Beasley of Boesche McDermott LLP, and David A. Sturdivant of Barrow & Grimm, P.C.

1.7     Respondent representatives present were Mickey Overall, Ginette Overall and Dr. Subir Roy.

1.8     Testimony continued (live and by deposition) for four days and final arguments were presented at the conclusion of the fourth day.

1.9     Claimants' Exhibits 1 - 523 were admitted into evidence and Respondents' Exhibits 1 - 172 were admitted into evidence.

1.10    Additional evidence was received, namely the remaining portions of depositions presented at the hearing, briefing by the parties and affidavits regarding attorneys' fees.

1.11    The record was closed June 20, 2014 at 5:00 p.m. CDT.

1.12    For ease of reference the parties shall be referred to collectively as "Claimants" and "Respondents".  Individual references to Victoria Time Corporation shall be ("VTC"), to LODA OKLA, LLC ("LODA"), to American National Resources LLC ("ANR"); and Mickey Overall and Ginette Overall ("Overalls").

1.13    The Panel, having heard the evidence and argument of counsel and having considered the exhibits admitted at the hearing, renders this unanimous Award.

## 2.  Reasons for Award

### Salt Water Disposal

2.1    The Joint Participation Agreement unambiguously provides for payment of $1.60 per barrel for water disposal.

2.2    The Panel is not persuaded that for accounting purposes the Joint Account which drilled the well need charge itself as that has been the custom from the outset; however, those wells disposing of water from a different Joint Account are required by the Agreement to pay for such services.

2.3    Although ANR is a party in both Joint Accounts, the ownership is different in each and the account which did not drill the New Salt Water Disposal well is obligated by contract to pay for disposal of all of its water.

2.4    The Panel notes that the entities represented by Dr. Subir Roy (and which he testified had different investor groups) are not the same in both projects, yet the entity YOR LLC that invested in the German Wells was not charged for Salt Water proposal.

2.5    Further, although ANR did participate in drilling the New Salt Water Disposal Well, the Agreement does not provide an exemption for its payment for salt water disposal for its share of what are known as the German Wells.

2.6    For the Magellan project to be economical, the large amount of saltwater produced by the wells needed to be disposed on site.

2.7    The initial salt water disposal well was essential to the Magellan project and the first well proposed by ANR.

2.8     Section 4.1 of the JPA is the provision for the ownership of the disposal well. It states:

> "All Disposal Well Revenue shall be vested Forty Nine Percent (49%) in VTC and Fifty One Percent (51%) in ANR.    This Revenue shall be generated from utilizing the SECTOR 1 disposal well at a charge $1.60/Barrel of liquid disposed into the Sector 1 disposal well owned by VTC/ANR.   Taxes are applicable on this service."

2.9     The opportunity to make $1.60 per barrel for the disposal of salt water produced on the German properties was a vital selling point for the Magellan prospect.

2.10     ANR pitched this as a win-win situation.   LODA testified that this was a very important factor in its decision to make the investment.

2.11     ANR operated the adjacent German properties.

2.12     ANR argues that it should not be charged for ANR's share of the saltwater produced from the German wells and disposed of into the Magellan disposal well.   ANR argues that such a construction of §4.1 would make the German wells uneconomical, consequently it cannot have been the intention of the parties to the JPA.

2.13     Respondents' Exhibit 167 was admitted as demonstrative evidence. This illustration indicates that the total net revenue for the German wells was $1,447,831.14 and that the total number of barrels of saltwater disposed was 5,931,660.[1]

2.14     Respondents' Exhibit 167 illustrates the impact of charging the full $1.60 ($9,490,656.00) per barrel would have on the economic feasibility the German wells.

2.15     Respondents' Exhibit 167 also illustrates the breakeven point for the cost of disposal of saltwater.   The total net revenue of the wells divided by the total number of barrels of saltwater disposed is $.25 cents per barrel.

---

[1] As opposed to total of 6,034,374 as shown in exhibit 159.

2.16    ANR, as operator knew, or should have known, at the time of the JPA that the amount it was proposing to charge its investors in the German wells made those wells uneconomical.

2.17    At the time of the JPA, LODA had no ability to determine the profitability of the German wells.

2.18    Accordingly, the circumstances surrounding the making of the contract support the Panel's construction of what it deems unambiguous language.

Turnkey Drilling Changes-Breach of Contract

2.19    The Joint Participation Agreement, along with the annexed Joint Operating Agreement (Claimants' Exhibit 1) unambiguously provides for liability for actual costs only.

2.20    The Panel is not persuaded that Authorities for Expenditure ("AFE") or Notices of Expenditure ("NOE") served to amend the Agreement.  Amendments must be in writing but must also be clear as to the purpose to amend.  Neither the AFE's nor the NOE's suffice for that purpose.

2.21    However, the Amendment to the Joint Participation Agreement dated January 9, 2012 (Claimants' Exhibit 5) unambiguously amends the Parties' agreement to provide that LODA would pay $1,255,597.50 for the first two wells.

2.22    The Amendment does not cover subsequent wells and operations and accordingly same should be accounted for on an actual cost basis pursuant to the Joint Operating Agreement.

Turnkey Drilling Charges-Fraud

2.23    The parties' unambiguous contracts provided for accounting between the parties on an actual cost basis.

2.24    Respondents represented to Claimants that wells were to be drilled on what was referred to as a "limited turnkey basis."

2.25    Respondents never disclosed, and indeed consistently refused to disclose, the basis upon which the wells were actually drilled.

2.26    Instead, Respondents represented costs much higher than actually incurred or paid, representations on which Claimants relied to their detriment.

2.27    Respondents' representations and omissions of material facts constitute common law fraud under Oklahoma law.

2.28    Both Mickey and Ginette Overall were active participants in the representations and omissions.

2.29    Accordingly, Mickey and Ginette Overall are liable under a fraud theory, along with ANR for whom they were acting.

AMI Overhead - Breach of Contract

2.30    The Panel is not persuaded that Exhibit "D" to the Joint Participation Agreement (Claimants' Exhibit 1) provides a contractual basis for additional charges under the Agreement which requires accounting for actual costs.

2.31    If the parties had intended to provide payments over time for entry into the project, as was suggested in the testimony, it would have been easy enough to make contractual provisions for same as opposed to providing only a budget in which the amounts shown are admittedly arbitrary and do not represent real expenditures.

2.32    Again, neither AFE's nor NOE's provide a contractual basis for such charges.

2.33    It is undisputed in the evidence that the budgeted numbers in Exhibit "D" to the Joint Participation misrepresented the actual cost of the categories identified.

2.34    These misrepresentations were carried forward into AFE's and NOE's forwarded to Claimants.

2.35    Claimants relied on these misrepresentations in paying overcharges as requested by the NOE's.

2.36    This conduct on the part of ANR and the Overalls constitutes common law fraud under Oklahoma law.

2.37    Both Mickey and Ginette Overall testified as to their participation in creating the misleading budget, which was carried forward into the AFE's and NOE's.

2.38    Further, each testified that the numbers represented in the budget were arbitrary and failed to accurately reflect the costs they purport to show.

2.39    Accordingly, Mickey and Ginette Overall are liable under the fraud theory, along with ANR, for whom they were acting.

Consulting/Supervision Overcharges

2.40    ANR breached its contract with Claimants when it contracted with its owners and employees to provide technical services.  The Joint Participation Agreement (Claimants' Exhibit 1) unambiguously provides that ANR will not contract or pay for services to a category of persons or entities who were clearly identified as insiders.

2.41    The annexed Joint Operating Agreement would have allowed for some or all of these charges were they not prohibited by the Joint Participation Agreement, which controls in the event of a conflict between the two.

2.42    The evidence was sometimes unclear as to who charged for what; however, the Panel is persuaded by the testimony of David R. Payne as to the operator's responsibility to clearly and completely account for direct charges.  This the operator did not do.

### Specific Performance - Assignments

2.43    The Joint Participation Agreement unambiguously requires assignment for all interest due Claimants in a form of assignment acceptable to Claimants.

2.44    James Carpenter testified at the Preliminary Hearing and at the final hearing regarding what would be required to fulfill the contract with respect to assignments.

2.45    The Panel is persuaded that the form of assignment presented as Claimants' Exhibit 486 is appropriate and that Claimants are entitled in equity to an Order of Specific Performance requiring execution of same by Respondent ANR.

### Gas Revenues Not Distributed

2.46    The Joint Participation Agreement and annexed Joint Operating Agreement unambiguously provide for distribution of proceeds by the operator after deducting only actual costs.

2.47    The evidence is not disputed that revenues for gas, not held in suspense, were not distributed, see Claimants' Exhibit No. 120.

2.48    ANR breached its contract with Claimants by not distributing these revenues.

### Claims of Forfeiture

2.49    The Panel is not persuaded by the evidence presented that forfeiture is justified under Annex IV to the Joint Operating Agreement (Claimants' Exhibit 2).

2.50    Accordingly, the Panel reviews these claims under remaining portions of such Agreement.

2.51    Article VI B makes provision for how non-consenting parties are to be treated and nowhere does it provide for pre-payment as a condition to consent.

2.52    The evidence showed that on three (3) occasions consent was given without pre-payment and, in one instance, no consent was received.

2.53    In the one instance where consent was not received, the task was repair of computer equipment outside the well bore and sufficient funds were available to complete the repairs. The Panel finds no basis, contractual or otherwise, for forfeiture under these facts.

Removal of Operator

2.54    Article V B of the Joint Operating Agreement provides the basis for and manner in which the operator may be removed.

2.55    The Panel finds by a preponderance of the probative evidence in the record that ANR has failed and refused to carry out its duties under the Joint Operating Agreement. Such failures include, but are not limited to, refusal to provide information to the non-operators, providing false and misleading information to the non-operators, failing to properly account for joint operations pursuant to the Joint Operating Agreement, self-dealing with respect to salt water disposal revenues, self-dealing regarding direct charges made for insiders and failure to distribute revenues received.

2.56    It being established that ANR has failed and refused to carry out its duties under the Joint Operating Agreement, they are properly removed upon vote of two (2) or more non-operators owning a majority of the non-operated interests.

2.57    VTC and LODA, owning sufficient interest, voted to and did remove ANR as operator effective December 1, 2013, see Claimants' Exhibit 115.

### Contractual Limitations

2.58    ANR argues that its liability is limited due to Claimants' failure to request an audit. The Panel does not agree.

2.59    ANR, in failing and refusing to perform its duties under the Joint Operating Agreement, obstructed all reasonable efforts to examine the very type of financial documents which would be necessary to perform a joint interest audit.

2.60    The Panel therefore concludes that it would have been a vain effort to request an audit.

2.61    The Panel further finds that implementation of the Dispute Resolution Procedures called for in the Joint Participation Agreement obviates any audit requirement contained in the Joint Operating Agreement as to all claims and defenses raised in this arbitration.

### Attorneys' Fees

2.62    Oklahoma follows the so called "American Rule" and attorneys' fees are generally not recoverable, absent a contractual provision or statute.

2.63    Neither of the parties' agreements made provision for award of attorneys' fees in a case such as this.

3.64    The Panel, not having awarded damages under any statutory cause of action, finds no basis in Oklahoma law for an award of attorneys' fees.

### Conclusion

2.65    Oklahoma law imposes a duty of good faith and fair dealing in every contract.

2.66    There was an absence of good faith on the part of ANR almost from the outset of the parties' relationship.

2.67    Moreover, this duty exists in the context of joint venturers in an oil and gas project. In this instance, the Respondents exceeded the limits of oil industry promotion to the point of violating this recognized obligation.

2.68    The Panel therefore finds, except as otherwise stated in this Award, that Respondents' claims and defenses are without merit.

2.69    The absence of good faith however does not, in every instance, constitute fraud or violation of statutes, such as RICO.

2.70    Except as otherwise provided herein, the Panel finds no occasion to find tort or statutory liability against ANR or the individual Respondents.

### 3. Award

3.1    The Panel enters the following declarations:

(a)    The Joint Participation Agreement admitted into evidence as Claimants' Exhibit 1 (hereinafter "JPA") unambiguously provides for payment of $1.60 per barrel for all water disposed of in the New Salt Water Disposal Well.

(b)    The Amendment to the JPA dated January 9, 2012 unambiguously provides that the $1,255,597.50 paid by Claimants to Respondent ANR was its share of drilling costs for wells 1 and 2, which were known as the New Salt Water Disposal Well and the Forrest & Mary Producing Well.

(c)    All other wells were drilled pursuant to the terms of the Joint Operating Agreement ("JOA") admitted into evidence as Claimants' Exhibit 2 and no contract was made for a turnkey or limited turnkey basis regarding the cost of drilling such wells.

(d)    Exhibit "D" to the JPA provides no contractual basis for payment of overhead beyond the overhead chargeable under the JOA.

(e)    The JPA unambiguously provides that the persons and categories of persons identified in Paragraph 14 thereof will not contract with or provide services to the Magellan Project.

(f)     No contractual basis exists for the declared forfeiture of Claimants' interest in the New Salt Water Disposal Well, the Forrest & Mary Producing Well, the Sanders Producing Well or the Hager Producing Well.

(g)     ANR has failed to carry out its duties as operator under the JOA.

(h)     Claimants LODA and VTC properly removed ANR as operator by vote of two or more non-operators owning a majority interest effective December 1, 2013.

(i)     All accounting from the date(s) of damage awards found hereafter shall be pursuant to the declarations and findings herein.

3.2     Claimants are granted specific performance regarding assignment of interests and Respondent ANR is ORDERED to execute and deliver to Claimants an assignment in the form of Claimants' Exhibit 486 within thirty (30) days of the date hereof.

3.3     The Panel makes the following Award of damages:

(a)     Respondent ANR shall pay to Claimants $4,298,508.00 representing revenues for salt water disposal through April 15, 2014, together with pre-judgment interest of $286,978.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(b)     Respondents, jointly and severally, shall pay to Claimants $842,191.00 representing overcharges for drilling costs on Hager, Sanders and Rodgers Producing Wells, and for fraud for overpayment of those drilling costs together with pre-judgment interest of $495,208.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(c)     Respondents, jointly and severally, shall pay to Claimants $659,972.50 representing damages for breach of contract and for fraud for overpayment of AMI overhead, together with pre-judgment interest of $88,072.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(d)     Respondent ANR shall pay to Claimants $25,499.64, representing undistributed gas income to Claimants' interest, together with post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(e)     Respondent ANR shall pay to Claimants $130,242.00, representing overpayment for improper direct charges, together with pre-judgment interest of $16,977.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(f)  Respondent ANR shall pay to Claimants interest on revenues suspended or not paid in the amount of $94,963.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(1) until paid.

(g)  The Administrative fees and expenses of the AAA totaling $25,650.00 are to be borne $25,650.00 by American Natural Resources, LLC. The compensation and expenses of Arbitrators totaling $175,064.67 are to be borne $175,064.67 by American Natural Resources, LLC. Therefore, American Natural Resources, LLC shall pay to Loda Okla LLC and Victoria Time Corp. the amount of $101,732.35 together with post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(1) until paid.

3.4  This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All relief not expressly granted herein is DENIED. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Signed July 10, 2014.

_____
Harper Estes, Chair

_____
Hon. William G. Arnot, III

_____
James Waldo

| | | |
|---|---|---|
| IN THE ARBITRATION BETWEEN | § § | |
| LODA OKLA, LLC and VICTORIA TIME CORP., | § § § | |
| Claimants, | § § | Case No. 71 20 1300 0374 (Elizabeth Kidd, Case Manager) |
| and | § § | |
| AMERICAN NATURAL RESOURCES, LLC, MICKEY JOE OVERALL, and GINETTE LEE OVERALL, | § § § § | |
| Respondents. | § § | |

## AWARD

We, THE UNDERSIGNED PANEL, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated June 16, 2011, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby AWARD as follows:

### 1. Introduction

1.1     Final hearing was held beginning at 9:00 a.m. June 2, 2014 at the Oklahoma City University School of Law in Oklahoma City, Oklahoma before Arbitrators Estes, Arnot and Waldo (hereinafter "Panel").

1.2     The arbitration proceeded under the authority of the clause found in the Joint Participation Agreement (Claimants' Exhibit No. 1) which provides as follows in paragraph 12:

> "Notwithstanding anything otherwise provided herein or in the JOA, the Parties agree that all disputes arising under this Agreement (or the JOA) shall be resolved by arbitration in Oklahoma City, Oklahoma, pursuant to the commercial arbitration rules of the American Arbitration Association ("AAA")."

1.3     This Award applies the substantive laws of the State of Oklahoma pursuant to the same paragraph which provides ". . . all the terms and provisions hereto shall be governed, construed and enforced according to the laws of the State of Oklahoma."

1.4     Claimants were represented by David M. Bates of Gardere Wynne Sewell LLP and Dean Luthey of Gable Gotwals.

1.5     Claimant representatives present were Paolo Rubino and Antonio D'Addario, counsel for Claimants.

1.6     Respondents were represented by Richard L. Rose and Richard J. Gore of Mahaffey & Gore PC, Bradley K. Beasley of Boesche McDermott LLP, and David A. Sturdivant of Barrow & Grimm, P.C.

1.7     Respondent representatives present were Mickey Overall, Ginette Overall and Dr. Subir Roy.

1.8     Testimony continued (live and by deposition) for four days and final arguments were presented at the conclusion of the fourth day.

1.9     Claimants' Exhibits 1 - 523 were admitted into evidence and Respondents' Exhibits 1 - 172 were admitted into evidence.

1.10    Additional evidence was received, namely the remaining portions of depositions presented at the hearing, briefing by the parties and affidavits regarding attorneys' fees.

1.11    The record was closed June 20, 2014 at 5:00 p.m. CDT.

1.12    For ease of reference the parties shall be referred to collectively as "Claimants" and "Respondents". Individual references to Victoria Time Corporation shall be ("VTC"), to LODA OKLA, LLC ("LODA"), to American National Resources LLC ("ANR"); and Mickey Overall and Ginette Overall ("Overalls").

1.13    The Panel, having heard the evidence and argument of counsel and having considered the exhibits admitted at the hearing, renders this unanimous Award.

## 2.  Reasons for Award

### Salt Water Disposal

2.1    The Joint Participation Agreement unambiguously provides for payment of $1.60 per barrel for water disposal.

2.2    The Panel is not persuaded that for accounting purposes the Joint Account which drilled the well need charge itself as that has been the custom from the outset; however, those wells disposing of water from a different Joint Account are required by the Agreement to pay for such services.

2.3    Although ANR is a party in both Joint Accounts, the ownership is different in each and the account which did not drill the New Salt Water Disposal well is obligated by contract to pay for disposal of all of its water.

2.4    The Panel notes that the entities represented by Dr. Subir Roy (and which he testified had different investor groups) are not the same in both projects, yet the entity YOR LLC that invested in the German Wells was not charged for Salt Water proposal.

2.5    Further, although ANR did participate in drilling the New Salt Water Disposal Well, the Agreement does not provide an exemption for its payment for salt water disposal for its share of what are known as the German Wells.

2.6    For the Magellan project to be economical, the large amount of saltwater produced by the wells needed to be disposed on site.

2.7    The initial salt water disposal well was essential to the Magellan project and the first well proposed by ANR.

2.8    Section 4.1 of the JPA is the provision for the ownership of the disposal well.  It states:

> "All Disposal Well Revenue shall be vested Forty Nine Percent (49%) in VTC and Fifty One Percent (51%) in ANR.  This Revenue shall be generated from utilizing the SECTOR 1 disposal well at a charge $1.60/Barrel of liquid disposed into the Sector 1 disposal well owned by VTC/ANR.  Taxes are applicable on this service."

2.9    The opportunity to make $1.60 per barrel for the disposal of salt water produced on the German properties was a vital selling point for the Magellan prospect.

2.10    ANR pitched this as a win-win situation.  LODA testified that this was a very important factor in its decision to make the investment.

2.11    ANR operated the adjacent German properties.

2.12    ANR argues that it should not be charged for ANR's share of the saltwater produced from the German wells and disposed of into the Magellan disposal well.  ANR argues that such a construction of §4.1 would make the German wells uneconomical, consequently it cannot have been the intention of the parties to the JPA.

2.13    Respondents' Exhibit 167 was admitted as demonstrative evidence. This illustration indicates that the total net revenue for the German wells was $1,447,831.14 and that the total number of barrels of saltwater disposed was 5,931,660.[1]

2.14    Respondents' Exhibit 167 illustrates the impact of charging the full $1.60 ($9,490,656.00) per barrel would have on the economic feasibility the German wells.

2.15    Respondents' Exhibit 167 also illustrates the breakeven point for the cost of disposal of saltwater.  The total net revenue of the wells divided by the total number of barrels of saltwater disposed is $.25 cents per barrel.

---

[1] As opposed to total of 6,034,374 as shown in exhibit 159.

2.16    ANR, as operator knew, or should have known, at the time of the JPA that the amount it was proposing to charge its investors in the German wells made those wells uneconomical.

2.17    At the time of the JPA, LODA had no ability to determine the profitability of the German wells.

2.18    Accordingly, the circumstances surrounding the making of the contract support the Panel's construction of what it deems unambiguous language.

Turnkey Drilling Changes-Breach of Contract

2.19    The Joint Participation Agreement, along with the annexed Joint Operating Agreement (Claimants' Exhibit 1) unambiguously provides for liability for actual costs only.

2.20    The Panel is not persuaded that Authorities for Expenditure ("AFE") or Notices of Expenditure ("NOE") served to amend the Agreement. Amendments must be in writing but must also be clear as to the purpose to amend. Neither the AFE's nor the NOE's suffice for that purpose.

2.21    However, the Amendment to the Joint Participation Agreement dated January 9, 2012 (Claimants' Exhibit 5) unambiguously amends the Parties' agreement to provide that LODA would pay $1,255,597.50 for the first two wells.

2.22    The Amendment does not cover subsequent wells and operations and accordingly same should be accounted for on an actual cost basis pursuant to the Joint Operating Agreement.

Turnkey Drilling Charges-Fraud

2.23    The parties' unambiguous contracts provided for accounting between the parties on an actual cost basis.

2.24    Respondents represented to Claimants that wells were to be drilled on what was referred to as a "limited turnkey basis."

2.25    Respondents never disclosed, and indeed consistently refused to disclose, the basis upon which the wells were actually drilled.

2.26    Instead, Respondents represented costs much higher than actually incurred or paid, representations on which Claimants relied to their detriment.

2.27    Respondents' representations and omissions of material facts constitute common law fraud under Oklahoma law.

2.28    Both Mickey and Ginette Overall were active participants in the representations and omissions.

2.29    Accordingly, Mickey and Ginette Overall are liable under a fraud theory, along with ANR for whom they were acting.

AMI Overhead - Breach of Contract

2.30    The Panel is not persuaded that Exhibit "D" to the Joint Participation Agreement (Claimants' Exhibit 1) provides a contractual basis for additional charges under the Agreement which requires accounting for actual costs.

2.31    If the parties had intended to provide payments over time for entry into the project, as was suggested in the testimony, it would have been easy enough to make contractual provisions for same as opposed to providing only a budget in which the amounts shown are admittedly arbitrary and do not represent real expenditures.

2.32    Again, neither AFE's nor NOE's provide a contractual basis for such charges.

AMI Overhead - Fraud

2.33    It is undisputed in the evidence that the budgeted numbers in Exhibit "D" to the Joint Participation misrepresented the actual cost of the categories identified.

2.34    These misrepresentations were carried forward into AFE's and NOE's forwarded to Claimants.

2.35    Claimants relied on these misrepresentations in paying overcharges as requested by the NOE's.

2.36    This conduct on the part of ANR and the Overalls constitutes common law fraud under Oklahoma law.

2.37    Both Mickey and Ginette Overall testified as to their participation in creating the misleading budget, which was carried forward into the AFE's and NOE's.

2.38    Further, each testified that the numbers represented in the budget were arbitrary and failed to accurately reflect the costs they purport to show.

2.39    Accordingly, Mickey and Ginette Overall are liable under the fraud theory, along with ANR, for whom they were acting.

Consulting/Supervision Overcharges

2.40    ANR breached its contract with Claimants when it contracted with its owners and employees to provide technical services. The Joint Participation Agreement (Claimants' Exhibit 1) unambiguously provides that ANR will not contract or pay for services to a category of persons or entities who were clearly identified as insiders.

2.41    The annexed Joint Operating Agreement would have allowed for some or all of these charges were they not prohibited by the Joint Participation Agreement, which controls in the event of a conflict between the two.

2.42 The evidence was sometimes unclear as to who charged for what; however, the Panel is persuaded by the testimony of David R. Payne as to the operator's responsibility to clearly and completely account for direct charges. This the operator did not do.

## Specific Performance - Assignments

2.43 The Joint Participation Agreement unambiguously requires assignment for all interest due Claimants in a form of assignment acceptable to Claimants.

2.44 James Carpenter testified at the Preliminary Hearing and at the final hearing regarding what would be required to fulfill the contract with respect to assignments.

2.45 The Panel is persuaded that the form of assignment presented as Claimants' Exhibit 486 is appropriate and that Claimants are entitled in equity to an Order of Specific Performance requiring execution of same by Respondent ANR.

## Gas Revenues Not Distributed

2.46 The Joint Participation Agreement and annexed Joint Operating Agreement unambiguously provide for distribution of proceeds by the operator after deducting only actual costs.

2.47 The evidence is not disputed that revenues for gas, not held in suspense, were not distributed, see Claimants' Exhibit No. 120.

2.48 ANR breached its contract with Claimants by not distributing these revenues.

## Claims of Forfeiture

2.49 The Panel is not persuaded by the evidence presented that forfeiture is justified under Annex IV to the Joint Operating Agreement (Claimants' Exhibit 2).

2.50 Accordingly, the Panel reviews these claims under remaining portions of such Agreement.

2.51    Article VI B makes provision for how non-consenting parties are to be treated and nowhere does it provide for pre-payment as a condition to consent.

2.52    The evidence showed that on three (3) occasions consent was given without pre-payment and, in one instance, no consent was received.

2.53    In the one instance where consent was not received, the task was repair of computer equipment outside the well bore and sufficient funds were available to complete the repairs. The Panel finds no basis, contractual or otherwise, for forfeiture under these facts.

Removal of Operator

2.54    Article V B of the Joint Operating Agreement provides the basis for and manner in which the operator may be removed.

2.55    The Panel finds by a preponderance of the probative evidence in the record that ANR has failed and refused to carry out its duties under the Joint Operating Agreement. Such failures include, but are not limited to, refusal to provide information to the non-operators, providing false and misleading information to the non-operators, failing to properly account for joint operations pursuant to the Joint Operating Agreement, self-dealing with respect to salt water disposal revenues, self-dealing regarding direct charges made for insiders and failure to distribute revenues received.

2.56    It being established that ANR has failed and refused to carry out its duties under the Joint Operating Agreement, they are properly removed upon vote of two (2) or more non-operators owning a majority of the non-operated interests.

2.57    VTC and LODA, owning sufficient interest, voted to and did remove ANR as operator effective December 1, 2013, see Claimants' Exhibit 115.

<u>Contractual Limitations</u>

2.58    ANR argues that its liability is limited due to Claimants' failure to request an audit. The Panel does not agree.

2.59    ANR, in failing and refusing to perform its duties under the Joint Operating Agreement, obstructed all reasonable efforts to examine the very type of financial documents which would be necessary to perform a joint interest audit.

2.60    The Panel therefore concludes that it would have been a vain effort to request an audit.

2.61    The Panel further finds that implementation of the Dispute Resolution Procedures called for in the Joint Participation Agreement obviates any audit requirement contained in the Joint Operating Agreement as to all claims and defenses raised in this arbitration.

<u>Attorneys' Fees</u>

2.62    Oklahoma follows the so called "American Rule" and attorneys' fees are generally not recoverable, absent a contractual provision or statute.

2.63    Neither of the parties' agreements made provision for award of attorneys' fees in a case such as this.

3.64    The Panel, not having awarded damages under any statutory cause of action, finds no basis in Oklahoma law for an award of attorneys' fees.

<u>Conclusion</u>

2.65    Oklahoma law imposes a duty of good faith and fair dealing in every contract.

2.66    There was an absence of good faith on the part of ANR almost from the outset of the parties' relationship.

2.67    Moreover, this duty exists in the context of joint venturers in an oil and gas project. In this instance, the Respondents exceeded the limits of oil industry promotion to the point of violating this recognized obligation.

2.68    The Panel therefore finds, except as otherwise stated in this Award, that Respondents' claims and defenses are without merit.

2.69    The absence of good faith however does not, in every instance, constitute fraud or violation of statutes, such as RICO.

2.70    Except as otherwise provided herein, the Panel finds no occasion to find tort or statutory liability against ANR or the individual Respondents.

### 3. Award

3.1    The Panel enters the following declarations:

(a)    The Joint Participation Agreement admitted into evidence as Claimants' Exhibit 1 (hereinafter "JPA") unambiguously provides for payment of $1.60 per barrel for all water disposed of in the New Salt Water Disposal Well.

(b)    The Amendment to the JPA dated January 9, 2012 unambiguously provides that the $1,255,597.50 paid by Claimants to Respondent ANR was its share of drilling costs for wells 1 and 2, which were known as the New Salt Water Disposal Well and the Forrest & Mary Producing Well.

(c)    All other wells were drilled pursuant to the terms of the Joint Operating Agreement ("JOA") admitted into evidence as Claimants' Exhibit 2 and no contract was made for a turnkey or limited turnkey basis regarding the cost of drilling such wells.

(d)    Exhibit "D" to the JPA provides no contractual basis for payment of overhead beyond the overhead chargeable under the JOA.

(e)    The JPA unambiguously provides that the persons and categories of persons identified in Paragraph 14 thereof will not contract with or provide services to the Magellan Project.

(f)     No contractual basis exists for the declared forfeiture of Claimants' interest in the New Salt Water Disposal Well, the Forrest & Mary Producing Well, the Sanders Producing Well or the Hager Producing Well.

(g)     ANR has failed to carry out its duties as operator under the JOA.

(h)     Claimants LODA and VTC properly removed ANR as operator by vote of two or more non-operators owning a majority interest effective December 1, 2013.

(i)     All accounting from the date(s) of damage awards found hereafter shall be pursuant to the declarations and findings herein.

3.2     Claimants are granted specific performance regarding assignment of interests and Respondent ANR is ORDERED to execute and deliver to Claimants an assignment in the form of Claimants' Exhibit 486 within thirty (30) days of the date hereof.

3.3     The Panel makes the following Award of damages:

(a)     Respondent ANR shall pay to Claimants $4,298,508.00 representing revenues for salt water disposal through April 15, 2014, together with pre-judgment interest of $286,978.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(b)     Respondents, jointly and severally, shall pay to Claimants $842,191.00 representing overcharges for drilling costs on Hager, Sanders and Rodgers Producing Wells, and for fraud for overpayment of those drilling costs together with pre-judgment interest of $495,208.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(c)     Respondents, jointly and severally, shall pay to Claimants $659,972.50 representing damages for breach of contract and for fraud for overpayment of AMI overhead, together with pre-judgment interest of $88,072.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(d)     Respondent ANR shall pay to Claimants $25,499.64, representing undistributed gas income to Claimants' interest, together with post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(e)     Respondent ANR shall pay to Claimants $130,242.00, representing overpayment for improper direct charges, together with pre-judgment interest of $16,977.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(l) until paid.

(f)     Respondent ANR shall pay to Claimants interest on revenues suspended or not paid in the amount of $94,963.00 and post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(1) until paid.

(g)     The Administrative fees and expenses of the AAA totaling $25,650.00 are to be borne $25,650.00 by American Natural Resources, LLC.  The compensation and expenses of Arbitrators totaling $175,064.67 are to be borne $175,064.67 by American Natural Resources, LLC.  Therefore, American Natural Resources, LLC shall pay to Loda Okla LLC and Victoria Time Corp. the amount of $101,732.35 together with post-judgment interest of 5.25% pursuant to 12 Okla.Stat.Sec. 727.1(1) until paid.

3.4     This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.  All relief not expressly granted herein is DENIED.  This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Signed July 10, 2014.

_____
Harper Estes, Chair

_____
Hon. William G. Arnot, III


_____
James Waldo

**Chocolate Sin**
*From the Kitchen of* *Deep South Dish*

*For the Crust:*

1/2 cup (1 stick) of unsalted butter, softened at room temperature
1 cup of all purpose flour
1/4 cup of finely minced pecans

*First Layer:*

1 (8 ounce) package of cream cheese, softened at room temperature
1 cup of powdered sugar
1 cup of Cool Whip (or homemade whipped cream)

*Second Layer:*

2 (3.9 ounce) packages of instant chocolate pudding
3 cups of whole milk

*Topping:*

1-2 cups of Cool Whip (or homemade whipped cream)
Additional chopped pecans, for garnish, *optional*
Grated chocolate or Heath bits, for garnish, *optional*

Preheat oven to 350 degrees F. In a bowl, mix together the flour, pecans and butter until mixture resembles cookie dough. Spread into the bottom of a 9 x 13 inch glass Pyrex baking dish. Bake at 350 degrees F for about 20 minutes or until lightly browned. Cool completely, about an hour..

Mix together the cream cheese and powdered sugar until well blended. Add 1 cup of the Cool Whip and mix together. Spread this layer over the cooled crust.

Mix together the two boxes of pudding with the 3 cups of milk until slightly thickened, about 3 minutes. Carefully spread over the cream cheese layer.

Spread the remaining cup of whipped topping on top. Cover and refrigerate - best if refrigerated 24 hours.  Before serving, grate chocolate over the top and sprinkle with additional chopped nuts. Cut into squares.

*Variations:*  Can be made with a variety of crusts by substituting crushed cookies, graham crackers or vanilla wafers for the flour in the crust. An Oreo crust is excellent (see below). Can