# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LODA OKLA, LLC and VICTORIA TIME CORP., | ) ) ) |
| Plaintiffs/Claimants, | ) ) |
| v. | ) Case No. 13-CV-191-GKF-FHM ) |
| MICKEY JOE OVERALL, GINETTE LEE OVERALL, and EASTON ENTERPRISES, INC., | ) ) ) ) |
| Defendants/Respondents, | ) ) |
| and | ) ) |
| AMERICAN NATURAL RESOURCES, LLC, | ) ) |
| Objector/Respondent. | ) |

## OPINION AND ORDER

Before the court is the motion of plaintiffs/claimants Loda Okla, LLC and Victoria Time Corporation (collectively, the "claimants") to confirm an arbitral award [Dkt. #32] and the motion of defendants/respondents Mickey Joe Overall and Ginette Lee Overall and of objector/respondent American Natural Resources, LLC (collectively, the "respondents") to vacate, modify and/or correct the award [Dkt. #47]. For the reasons given below, the respondents' motion is denied, the claimants' motion is granted, and defendant Easton Enterprises, Inc. is dismissed without prejudice.

**I.  Background**

On March 29, 2013, the claimants filed a Complaint against Mickey Overall, Ginette Overall, and Easton Enterprises, Inc. [Dkt. #2]. Among other things, claimants alleged Mickey Overall fraudulently induced Victoria Time Corporation ("VTC") to enter into a joint

participation agreement ("JPA") with American Natural Resources, LLC ("ANR"), which the Overalls own and control, and to invest millions of dollars to buy mineral leasehold acreage that ANR did not own and to invest in drilling and development.

The court stayed this case to allow the parties to submit the dispute to arbitration, as provided in the JPA. [Dkt. #31]. A panel of three arbitrators conducted a hearing in Oklahoma City, Oklahoma beginning on June 2, 2014. [Dkt. #34-1, p. 2]. ANR was a party to the arbitration. On July 10, 2014, the panel issued an award in the claimants' favor. The panel granted claimants specific performance regarding an assignment of interests and ordered ANR to execute and deliver an assignment in the form of Claimants' Exhibit 486. [*Id.*, p. 13]. The panel also awarded the following damages:

A. ANR shall pay to claimants $4,298,508.00, representing revenues for salt water disposal, together with pre-award interest of $286,978.00, and post-award/pre-judgment interest at the rate of 5.25%;

B. Respondents, jointly and severally, shall pay to claimants $842,191.00, representing overcharges for drilling costs and for fraud for overpayment of those drilling costs, together with pre-award interest of $495,208.00, and post-award/pre-judgment interest at the rate of 5.25%;

C. Respondents, jointly and severally, shall pay to claimants $659,972.50, representing damages for breach of contract and for fraud for overpayment of overhead, together with pre-award interest of $88,072.00, and post-award/pre-judgment interest at the rate of 5.25%;

D. ANR shall pay to claimants $25,499.64, representing undistributed gas income, and post-award/pre-judgment interest at the rate of 5.25%;

E. ANR shall pay to claimants $130,242.00, representing overpayment for "improper direct charges," together with pre-award interest of $16,977.00, and post-award/pre-judgment interest at the rate of 5.25%;

F. ANR shall pay to claimants interest on revenues suspended or not paid in the amount of $94,963.00, and post-award/pre-judgment interest at the rate of 5.25%; and

G. ANR shall pay to claimants $101,732.35 for arbitration fees and expenses and arbitrator compensation, plus post-award/pre-judgment interest at the rate of 5.25%.

[*Id.*, pp. 13–14]. The award was in full settlement of all claims and counterclaims submitted to the arbitration, and all relief not expressly granted in the award was denied. [*Id.*, p. 14].

## II. Discussion

Under the Federal Arbitration Act ("FAA"), a court must grant an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

Section 10 of the FAA permits a United States district court to vacate an arbitration award upon the application of any party to the arbitration under any of four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Under section 11, meanwhile, the court may make an order modifying or correcting the award upon the application of any party to the arbitration in any of the following cases:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

The Tenth Circuit has also recognized "a handful of judicially created reasons" on which a district court may rely to vacate an arbitration award, including violations of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing. *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001). "Outside of these limited circumstances," however, "an arbitration award must be confirmed," and "[e]rrors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Denver & Rio Grande W. R.R. v. Union Pacific R.R.*, 119 F.3d 847, 849 (10th Cir. 1997) (citations omitted); *see also Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification").

Respondents assert two grounds to vacate the award. First, they argue the panel substantially and unfairly prejudiced them when it refused to grant a continuance after being informed that claimants' primary witness was ill and would not be at the hearing. Second, they argue the panel exceeded its powers by finding fraud absent evidence supporting the elements of fraud. Respondents assert as a third argument that if the award is not vacated, it should be modified so as to offset $525,687.81 against the amount awarded to the claimants.

A. The Panel's Denial of Respondents' Motion for Continuance

On the morning of Friday, May 30, 2014, three days before the arbitration hearing was to begin, the claimants emailed the respondents and the panel to inform them that Valentino D'Addario, one of the claimants' directors and an anticipated witness in the case, would be unable to attend the hearing due to cardiac issues that prevented him from travelling from his home in Rome. [Dkt. #47-19]. Two hours later, the respondents emailed the panel requesting an emergency conference to discuss "the best ways to proceed and address the very real and very clear prejudice facing Respondents" as a result of D'Addario's inability to attend the hearing, as well as a discovery issue. [Dkt. #47-20, pp. 2–4]. D'Addario, the respondents noted, was responsible for negotiating the provision of the JPA that dealt with saltwater disposal fees, which accounted for a majority of the damages sought by claimants. [*Id.*, p. 2]. Respondents asserted that D'Addario's attendance and testimony at the hearing was "of paramount importance to the claims and defenses of the parties." [*Id.*]. The respondents also stated their intention to question D'Addario regarding an alleged conflict between the deposition testimony of one of the claimants' experts, David Payne, who purportedly said his opinions were predicated in part on information he learned from D'Addario, and that of D'Addario, who said he had not spoken with the Payne regarding those topics. [*Id.*].

In response, the claimants contended that a continuance was unnecessary, as the respondents had deposed D'Addario just a few weeks before as the claimants' 30(b)(6) representative on certain topics, including negotiation of the JPA. [Dkt. #47-22, p. 2]. The claimants also argued the deposition excerpts did not support the respondents' allegations of a conflict between the testimonies of D'Addario and Payne; D'Addario, they explained, had been asked if he talked to Payne "in the context of preparing for the 30(b)(6) deposition," while Payne

was asked if he ever talked to D'Addario. [*Id.*]. The claimants further noted that Mr. Rubino, a witness and claimants' party representative, was already enroute from Rome, and that claimants would be ready to proceed on Monday morning. [*Id.*]. "Not proceeding," the claimants maintained, "would be highly prejudicial to Claimants, whose funds and project are frozen." [*Id.*].

Upon review of the respondents' request and the claimants' response, the panel denied the motion for continuance and emailed the parties notice of its decision. [Dkt. #47-23].

As noted above, the FAA allows an award to be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "Because the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995).

The Tenth Circuit has characterized its traditional review of an arbitration award as "a sort of 'abuse of discretion' standard." *Jenkins v. Prudential-Bache Securities, Inc.*, 847 F.2d 631, 633–34 (10th Cir. 1988) (citing 9 U.S.C. § 10). While it is possible that an arbitration panel is entitled to even more deference than an abuse of discretion standard would afford,[1] the

---

[1] Other circuits have afforded even more deference to the arbitration panel, upholding its refusal to postpone a hearing if there was "any reasonable basis" for doing so. *See, e.g.*, *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006); *Scott v. Prudential Securities, Inc.,* 141 F.3d 1007, 1016 (11th Cir. 1998); *DVC-JPW Investors v. Gershman*, 5 F.3d 1172, 1174 (8th Cir. 1993). The Tenth Circuit has neither adopted nor rejected this standard, though it has quoted similar language in discussing the limited judicial review of a panel's decision to postpone or not

arbitration panel could not have been "guilty of misconduct" if its refusal to grant the requested postponement did not at a minimum amount to an abuse of discretion. *See ARW Exploration Corp.*, 45 F.3d at 1464 (finding that "the arbitrator was clearly acting within the scope of his discretion in not continuing the hearing"); *Painters Local Union No. 171 Int'l Bhd. of Painters & Allied Trades, AFL-CIO v. Williams & Kelly, Inc.*, 605 F.2d 535, 538 (10th Cir. 1979) (finding that the arbitrator "did not abuse his discretion in refusing to grant a continuance").

The determination of whether a denial of a request for a continuance constitutes an abuse of discretion "turns largely upon the circumstances of the individual case." *Rogers v. Andrus Transp. Services*, 502 F.3d 1147, 1151 (10th Cir. 2007) (quoting *United States v. West*, 828 F.2d 1468, 1469–70 (10th Cir. 1987)). The relevant factors to be considered include:

> the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the [panel] resulting from the continuance; the need asserted for the continuance and the harm that appellant might suffer as a result of the [panel's] denial of the continuance. . . . No single factor is determinative and the weight given to any one may vary depending on the extent of the [respondents'] showing on the others.

*Id.* (quoting *West*, 828 F.2d at 1170). The absence of an explicitly stated reason is harmless where the reason is apparent. *Long v. United States*, 972 F.2d 1174, 1183 (10th Cir. 1992). An abuse of discretion, moreover, does not require vacation of the arbitral award if the abuse was harmless error; the party alleging abuse of discretion must prove prejudice. *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993).

---

postpone a hearing. *ARW Exploration Corp.*, 45 F.3d at 1463–64 (quoting *Fairfield & Co. v. Richmond F. & P. R.R. Co.*, 516 F.Supp. 1305, 1313–14 (D.D.C. 1981) ("[A]ssuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds.")).

In this case, the panel received the respondents' motion for continuance[2] on Friday morning before the hearing on Monday, June 2, 2014. Respondents submitted the motion less than two hours after learning that D'Addario would be unable to attend the hearing.[3] But a continuance would have come at considerable inconvenience to the claimants, who had Paolo Rubino, the CEO and another witness, enroute from Rome, and were prepared to proceed on the scheduled date. [Dkt. #47-22, p. 2]. If the proceedings had been continued to allow D'Addario to attend, it is unknown how long the parties would have had to wait for his travelling restrictions to be lifted.[4] Finally, the respondents had deposed D'Addario on May 9, 2014, and had questioned him regarding the parties' negotiations. [Dkt. #49-8]. Given these considerations, the panel did not abuse its discretion in denying the motion for continuance.

Respondents contend the panel denied the request to postpone the proceedings because it prioritized personal obligations over a full and just adjudication of the case. [Dkt. #47, p. 24]. In support, they reference a comment by an arbitrator during the respondents' examination of one

---

[2] To be more precise, the respondents requested an "emergency conference" to discuss certain discovery issues and the ramifications of D'Addario's inability to attend the June 2 hearing, but did not specifically request a continuance. [Dkt. #47-20, pp. 2–4]. Both the claimants [Dkt. #47-22] and the panel [Dkt. #47-23] nevertheless understood the respondents' request as a motion for continuance.

[3] Respondents assert that D'Addario's medical report shows the claimants knew about D'Addario's cardiac condition at least two weeks before. [Dkt. #47, p. 16]. However, both claimants and respondents had known generally about D'Addario's heart condition for several months, as the parties had scheduled D'Addario's deposition around the dates he was well enough to travel overseas. [Dkt. #49-1; #49-2; #49-8]. The email of May 30, 2014, informing the panel and the respondents that D'Addario would be unable to attend the hearing, included two attachments: a medical record of heart tests dated May 13, 2014, and a doctor's note dated May 28, 2014, which advised D'Addario not to travel abroad until he received a pacemaker. [Dkt. #47-19, pp. 3–4]. The medical report does not establish that the claimants knew "at least two weeks before" that D'Addario's heart condition would prevent him from attending the hearing.

[4] Respondents suggest D'Addario may have been available to testify by the beginning of the following week, but offer no facts in support.

of their witnesses, in which the arbitrator stated "Just, you know, the judge here has . . . an engagement next week . . . and he's worried that you guys are going to keep him so long that he can't get there." [Dkt. #47-2, p. 15]. A review of the transcript shows the comment, which followed a witness's lengthy response to a question requiring only a simple answer, was understood as an admonishment to the witness to keep his answers short and responsive to the questions asked. Indeed, the arbitrator ended his comment with the admonition "Let's do try to listen to the question." [*Id.*]. It was not the first time that witness had been so admonished. [*Id.*, p. 14]. The court finds no support for the notion that the panel denied the respondents' request to postpone the proceedings because it prioritized their personal schedules over the right to a full and fair hearing.

And even if the respondents had met their burden of showing the panel abused its discretion in refusing to grant the continuance, they have failed to demonstrate they suffered any consequent prejudice. The respondents contend D'Addario's presence was "critical because he was the only Claimants' witness with first-hand knowledge of the disputed issues—including Claimants' knowledge of certain facts at the time of the JPA's negotiation and execution." [Dkt. #47, p. 20–21]. Under Oklahoma law, extrinsic facts showing the interpretation parties put upon a contract are admissible when it is alleged that fraudulent representations were made to induce execution of the contract. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (internal citations omitted). Unambiguous contracts may otherwise be construed only in light of the language contained within the contracts' four corners. *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1172 (10th Cir. 2005). Here, though the claimants originally alleged in their Complaint that Mickey Overall fraudulently induced them to enter into the JPA [Dkt. #2, ¶ 10], they did not present a fraudulent

inducement claim at the arbitration hearing. [*See* Dkt. #49-4, pp. 2–3]. Nor did the panel make any findings regarding fraudulent inducement, or base any portion of its award on the theory that the respondents fraudulently induced the claimants to enter into the JPA. Instead, its award was based on its findings regarding the respondents' breach of, and fraud in the performance of, the JPA, the terms of which the panel determined to be unambiguous. [Dkt. #34-1, pp. 4, 6, 9, 12]. Therefore, the respondents were not prejudiced by their inability to present evidence of D'Addario's knowledge of certain facts at the time of the JPA's negotiation and execution.

Respondents maintain they should have been afforded the opportunity to impeach D'Addario's credibility by live testimony before the panel, since the information he conveyed to the claimants' damages expert, David Payne, was allegedly the basis of the opinions Payne presented at the hearing. [Dkt. #47, p. 21]. The record contradicts this assertion. On review of Payne's testimony, it is clear his opinions were based on his review of the relevant documents and his own first-hand knowledge, rather than on any information D'Addario had conveyed regarding the negotiation of the JPA. [Dkt. #49-10, pp. 5–18]. In fact, Payne offered no opinions about the negotiation of the JPA, and did not mention D'Addario during his testimony. Nor did the respondents ask Payne about any information from D'Addario on which he allegedly relied. The respondents' inability to impeach D'Addario's credibility by live testimony therefore did not cause them to suffer prejudice with respect to the opinions Payne presented at the hearing.

Respondents contend the panel denied their request to depose other witnesses "based on Claimants' assurances that D'Addario would be present at trial." [Dkt. #47, p. 22]. But they do not identify those witnesses in their motion. Nor do they suggest what material evidence those depositions may have revealed. In fact, the only support they offer for their contention is a citation to the claimants' response in opposition to the respondents' motion for an order

compelling the production of witnesses for depositions. [Dkt. #50, p. 7]. The basis of this response, however, was not that these witnesses were unnecessary in light of D'Addario's expected appearance, but that none of the individuals were "proper corporate representatives," and thus had to be "treated as any other non-party witness." [Dkt. #47-26, pp. 3–4]. The respondents' assertion that D'Addario's expected attendance at the hearing prevented them from deposing other witnesses is therefore unsupported.

Respondents' assertion that they were prejudiced by D'Addario's absence is further undermined by their failure to use D'Addario's deposition testimony at the arbitration hearing. They suggest they did not do so because the deposition "was not a trial deposition,"[5] and because during the deposition, the claimants raised objections on "key issues" and "instructed [D'Addario] not to answer vital questions." [Dkt. #50, p. 8 n.1]. Yet the respondents indicate only two instances during D'Addario's deposition where he was instructed not to answer the question presented. [*Id.*]. First, D'Addario was asked who owned VTC, prompting an objection to the extent that the question asked about shareholders and members of the corporation. [Dkt. #50-1, pp. 3–4]. D'Addario was later asked if he had spoken with another corporate officer in preparation for the deposition, and was instructed not to reveal conversations he had with his attorneys. [Dkt. #50-1, p. 5]. Neither of these questions appears particularly "vital," and it is unlikely the answers would have been admissible. Given the respondents' failure to use D'Addario's deposition testimony at the hearing, their assertion that they were prejudiced by his absence carries little weight.

---

[5] Fed. R. Civ. P. 32 draws no distinction as to admissibility at trial between "trial depositions" and "discovery depositions."

For these reasons, the respondents fail to demonstrate they suffered prejudice due to the panel's denial of the requested continuance. Because the panel did not abuse its discretion, and because the respondents have failed to show they suffered prejudice as a result of that denial, the panel was not "guilty of misconduct." The motion to vacate the arbitration award under § 10(a)(3) is therefore denied.

### B. The Panel's Finding that the Respondents Committed Fraud

Respondents next contend the award should be vacated because the Panel found fraud absent evidence supporting the elements of fraud. [Dkt. #47, p. 25]. In order for respondents to prevail, they must show "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). A party seeking relief under § 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). "It is not enough . . . to show that the panel committed an error—or even a serious error." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also ARW Exploration Corp.*, 45 F.3d at 1463 ("An arbitrator's erroneous interpretations or applications of law are not reversible."). Only "manifest disregard" of the law—*i.e.*, "willful inattentiveness to the governing law"—renders an arbitration award subject to reversal. *ARW Exploration Corp.*, 45 F.3d at 1463. To warrant setting aside an arbitration award based on manifest disregard of the law, the record must show the arbitrators knew the law and explicitly disregarded it. *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1176 (10th Cir. 2006).

The elements of actionable fraud are:

1) a false material misrepresentation,
2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth,
3) with the intention that it be acted upon, and

4) which is relied on by the other party to his (or her) own detriment.

*Bowman v. Presley*, 2009 OK 48, ¶13, 212 P.3d 1210, 1218.[6]

In determining that the respondents committed fraud, the panel expressly found the respondents omitted material facts and made misrepresentations on which the claimants relied to their detriment, and concluded that each of the three respondents is liable for fraud. [Dkt. #34-1, pp. 7–8]. In their reply, respondents argue the panel disregarded the law because it did not also make an explicit finding of knowledge of falsity or reckless disregard for the truth. [Dkt. #50, p. 9]. But such specificity is unnecessary, as "arbitrators are generally not required to delineate the reasons for their decision." *Hollern*, 458 F.3d at 1177. Because the arbitrators were not required to set out detailed findings of fact or conclusions of law, setting out each element of each cause of action, the panel's failure to do so does not constitute a manifest disregard of the law. *Id.*

If, however, this court must review the record to determine whether sufficient evidence exists to support the finding of fraud, the court finds sufficient evidence exists. As to the first claim of fraud, respondents falsely represented that they had expended $2,262,500 in drilling costs, when the wells had actually been drilled for only $709,086. Respondents collected from claimants the higher, fraudulent drilling costs, even though they were over three times greater than the costs actually incurred. Clearly, respondents either knew that their material misrepresentations were false, or they made them recklessly without knowledge of the truth. This court concludes that the panel did not exceed its powers and was not willfully inattentive to the governing law of fraud in Oklahoma with regard to the first claim of fraud.

As to the second claim of fraud, the respondents falsely represented the salaries of specific individuals and other office expenditures incurred as overhead. The panel specifically

---

[6] The Panel applied Oklahoma law, as chosen by the parties in the JPA. [Dkt. #34-1, p. 3].

found both Mickey and Ginette Overall "testified that the numbers represented in the budget were arbitrary and failed to accurately reflect the costs they purport to show." [Dkt. #34-1, p. 8]. This court concludes sufficient evidence exists to show the respondents acted with knowledge of falsity or reckless disregard for the truth, and the panel was not willfully inattentive to the governing law of fraud with respect to the second claim of fraud.

Respondents have failed to show that the panel manifestly disregarded the law when it found fraud. The motion to vacate pursuant to § 10(a)(4) is denied.

### C. Request for Modification and/or Correction of the Award

Finally, respondents contend claimants owe them $525,687.81 in unpaid operational expenses, and that they are entitled to an offset in that amount against the award. [Dkt. #47, pp. 28–29]. Claimants respond that this argument is nothing more than a judicially forbidden relitigation of the merits of the controversy. [Dkt. #49, p. 20].

The FAA authorizes a district court to modify or correct "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). A court may not modify or correct an award if it would affect the merits of the controversy. 9 U.S.C. § 11(c); *see also ARW Exploration Corp.*, 45 F.3d at 1463 (noting that courts may not "instruct the arbitrator as to the correct computation of damages").

Here, respondents claimed in their post-hearing brief, submitted to the panel approximately one month before it issued its award, that they incurred and paid operational expenses chargeable to claimants which claimants did not pay. [Dkt. #47-30, pp. 28–29]. The panel denied this claim in its award, stating that the award was "in full settlement of all claims and counterclaims submitted in this Arbitration," and that "[a]ll relief not expressly granted

herein is DENIED." [Dkt. #34-1, p. 14]. Thus, the modification respondents request would not correct an "evident material miscalculation of figures"—it would grant relief the panel denied. Respondents have failed to show that the panel's denial of their counterclaim is premised on any calculation, much less a material miscalculation of figures evident in the award. The requested modification or correction would affect the merits of the controversy, and must therefore be denied.[7]

Because the Motion to Vacate, Modify, or Correct the Arbitration Award is denied, the Motion to Confirm Arbitral Award is granted. Contemporaneously herewith, the court enters a Judgment confirming the award and awarding damages to the claimants as provided in the award. As detailed in the attached exhibit, these damages include the principal, pre-award interest, post-award/pre-judgment interest accruing between the entry of the arbitral award and the entry of this court's judgment at the rate of 5.25% per annum, and post-judgment interest accruing from the date of judgment at the federal statutory rate. *See Parsons & Whittemore Alabama Mach. & Servs. Corp. v. Yeargin Const. Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984); 3 Commercial Arbitration § 123:9.

    D.  <u>Dismissal of Defendant Easton Enterprises, Inc.</u>

In response to the court's order to show cause why the action against Easton Enterprises, Inc. should not be dismissed for failure to effectuate service [Dkt. #51], the claimants state they have no objection to the dismissal of Easton Enterprises, Inc. from this action. [Dkt. #52].

---

[7] In footnote 12 of their motion, respondents suggest that a basis exists to vacate the award on the grounds that the panel did not make a "mutual, final, and definite award upon the subject matter." As noted above, however, the panel's award fully settled all claims submitted, and denied all relief not expressly granted.

Defendant Easton Enterprises, Inc. is therefore dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

**III. Conclusion**

For the foregoing reasons, respondents' Motion to Vacate, Modify, and/or Correct Arbitration Award [Dkt. #47] is denied; claimants' Motion to Confirm Arbitral Award [Dkt. #32] is granted; and defendant Easton Enterprises Inc. is dismissed without prejudice.

ENTERED this 30th day of March, 2015.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

| Paragraph of Award | Payor | Principal | Pre-award interest | Post-award/pre-judgment interest rate | Post-award/pre-judgment interest accruing from 07/10/14 to 03/30/15 |
|---|---|---|---|---|---|
| 3.3(a) | ANR | $ 4,298,508.00 | $ 286,978.00 | 5.25% | $ 173,463.28 |
| 3.3(d) | ANR | $ 25,499.64 | | 5.25% | $ 964.62 |
| 3.3(e) | ANR | $ 130,242.00 | $ 16,977.00 | 5.25% | $ 5,569.11 |
| 3.3(f) | ANR | $ 94,963.00 | | 5.25% | $ 3,592.33 |
| 3.3(g) | ANR | $ 101,732.35 | | 5.25% | $ 3,848.41 |
| | **Total (ANR)** | **$ 4,650,944.99** | **$ 303,955.00** | | **$ 187,437.76** |
| 3.3(b) | All respondents | $ 842,191.00 | $ 495,208.00 | 5.25% | $ 50,592.16 |
| 3.3(c) | All respondents | $ 659,972.50 | $ 88,072.00 | 5.25% | $ 28,297.60 |
| | **Total (all respondents)** | **$ 1,502,163.50** | **$ 583,280.00** | | **$ 78,889.76** |